UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------------ x
ROMEO ELIJAH MARTINEZ,                                             :
                                                                   :
                                Plaintiff,                         :
                                                                   :    [INITIAL REVIEW
           -against-                                               :    ORDER]
                                                                   :
ANGEL QUIROS, et al.,                                              :    3:25-CV-520 (VDO)
                                                                   :
                                Defendants.                        :
------------------------------------------------------------------ x
```

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Romeo Elijah Martinez, an inmate incarcerated at Osborn Correctional Institution ("Osborn") in the custody of the Connecticut Department of Correction ("DOC"),[1] filed this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. In Plaintiff's original complaint, he brought claims for medical deliberate indifference.[2] Upon initial review, the Court found that Plaintiff had not alleged facts to describe how any specific defendant was involved in the asserted medical indifference, and thus, Plaintiff had not alleged any plausible claim of constitutional violations by defendants.[3] The Court dismissed the complaint with leave to amend,[4] and Plaintiff subsequently filed an Amended Complaint.[5] He brings claims against Defendants APRN Elina Morozov, RN Mariya Zea, APRN Cheryl Spano Lonis, DOC

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website reflects that Plaintiff was sentenced on February 7, 2024, and was admitted to the DOC the same day. *See* Connecticut DOC, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=273459 (last visited Jan. 14, 2026).

[2] Compl., ECF No. 1.

[3] *See* Initial Review Order, ECF No. 13.

[4] *Id*.

[5] Am. Compl., ECF No. 16.

Commissioner Angel Quiros, Deputy Warden Moore, and Warden Robert Martin for deliberate indifference to his medical needs under the Eighth Amendment.[6] He states that he is suing Defendants in both their individual and official capacities, but he solely seeks monetary relief.[7]

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the amended complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

I. **FACTUAL BACKGROUND**

Plaintiff was transferred from New Haven Correctional Center ("NHCC") to Osborn in February 2024.[8] Plaintiff was seen by Defendant Morozov when he arrived at Osborn, and she was his medical provider from February 2024 to October 2024.[9] He alleges that she knew about all his issues from reviewing his file from NHCC, and that she knew about his diabetes, arthritis, herniated and slipped disk, sciatica, and his bad left arm, but she ignored his medical

---

[6] *Id*. at 2-3.
[7] *Id*. at 2, 6.
[8] *Id*. at 5.
[9] *Id*. at 5, 8.

issues by denying him a bottom bunk pass and refusing to get him his diabetes medication.[10] He also alleges that he repeatedly wrote to Defendant Morozov and complained about pain and needing a cane and a podiatrist due to his multiple medical issues, but she denied his requests.[11]

In March 2024, Plaintiff fell off his bunk and he did not know if the fall was caused by "a stroke or heart attack."[12] Plaintiff was told by a correctional officer to write to medical again, so Plaintiff wrote to medical again about his blood pressure, diabetes, and pain, but nothing was done.[13] Plaintiff claims that Defendant Morozov only prescribed him diabetes medication after he fell for the second time.[14]

A few weeks later, on April 5, 2024, Plaintiff was attempting to get on his bunk, and he fell backwards hurting himself.[15] His cellmate called for the correctional officer and he was taken to medical.[16] He was seen by Defendant Zea, who had Plaintiff's request "from days to weeks earlier."[17] Defendant Zea laughed and said, "wow, you fell again," she told Plaintiff there was nothing wrong with him, and only gave him Tylenol even though he could not touch his toes and was limping.[18] Plaintiff claims that Defendant Zea refused to check him properly

---

[10] *Id.*

[11] *See id.* at 8.

[12] *Id.* at 5.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 6.

[16] *Id.*

[17] *Id.*

[18] *Id.*

and provide medical help even though she witnessed him limping and having limited "physical motion."[19]

Next, in November 2024, Plaintiff saw Defendant Spano Lonis, and she took him off the pain pills he was put on a month prior.[20] She also told him that he had no pain even though Plaintiff had complained about pain in his hands, feet, back, and genitals.[21] After eleven months of complaining, Defendant Spano Lonis finally examined Plaintiff's genitals and prescribed him foot fungus cream, which he asserts has done nothing. Plaintiff claims he is still experiencing pain, it hurts to clean his genitals, and he also walks with a limp.[22] Plaintiff alleges that, to date, he is still on a waiting list to see Defendant Spano Lonis and she has yet to do anything to fully resolve his medical issues.[23]

Lastly, Plaintiff claims that he physically spoke to Defendants Deputy Warden Moore and Warden Martin, and that these Defendants know about the pain and discomfort he is experiencing, but have done nothing.[24] Plaintiff claims that the next step was Defendant Commissioner Quiros, but that "was another dead end" and Defendant Quiros still knew about Plaintiff's discomfort and did nothing.[25] Plaintiff states that he is solely seeking monetary damages, but he is suing all Defendants in both their individual and official capacities.[26]

---

[19] *Id*.

[20] *Id*. at 8.

[21] *Id*.

[22] *Id*.

[23] *Id*. at 8-9.

[24] *Id*. at 8.

[25] *Id*. at 9.

[26] *Id*.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F.

5

App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike.").

### III.    DISCUSSION

Plaintiff brings claims against Defendants APRN Elina Morozov, RN Mariya Zea, APRN Cheryl Spano Lonis, DOC Commissioner Angel Quiros, Deputy Warden Moore, and Warden Robert Martin for deliberate indifference to his medical needs. Because Plaintiff was a sentenced inmate at the time of the alleged constitutional violations, his claim is governed by the Eighth Amendment.

#### A.    Deliberate Indifference to Medical Needs under the Eighth Amendment

To state a claim for deliberate indifference to a serious medical need, Plaintiff must satisfy an objective and subjective requirement. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).

As to the objective component, courts must examine whether the alleged deprivation is "sufficiently serious." *Id.* The condition must produce "death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citations omitted). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). When evaluating the

seriousness of a medical condition, courts must consider the plaintiff's condition at the time he was seen by the defendants. *See El-Hanafi v. United States*, No. 13-CV-2072, 2015 WL 72804, at *15 (S.D.N.Y. Jan. 6, 2015).

Under the subjective prong, the inmate must show that the defendant acted with "subjective[] recklessness," so that the defendant must have been actually aware of a substantial risk that the prisoner would suffer serious harm as a result of their actions or inactions. *Spavone*, 719 F.3d at 138. This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006), *abrogated in part on other grounds by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023)). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under Section 1983. *Id*. at 279–80. The Second Circuit has considered a delay in the provision of medical treatment to amount to deliberate indifference "where there was a needlessly prolonged delay, or where officials deliberately delayed the treatment as a form of punishment or ignored a life threatening and fast-degenerating condition." *Burns v. Lupis*, No. 3:23-CV-23 (KAD), 2024 WL 1435631, at *4 (D. Conn. Apr. 3, 2024) (citations omitted).

### 1. Defendants Morozov, Zea & Spano Lonis

For purposes of initial review, the Court finds that Plaintiff has shown that his medical needs were sufficiently serious. Plaintiff has also plausibly pleaded that Defendants Morozov, Zea, and Spano Louis were deliberately indifferent to his medical needs.

Plaintiff alleges that he first saw Defendant Morozov in February 2024, and she refused to prescribe him diabetes medication until April 2024, when he fell from his top bunk for a

7

second time. Plaintiff also claims that Defendant Morozov knew that Plaintiff had arthritis, a herniated and slipped disk, sciatica, and a bad left arm, but she refused to provide him a bottom bunk pass and ignored his requests for a cane and to see a podiatrist. As a result, Plaintiff fell from his top bunk, and he alleges that he is currently in pain. As for Defendant Zea, Plaintiff claims that he saw her after he fell off his top bunk and she laughed at him, only prescribed him Tylenol, and refused to examine him even though she was aware that he could not touch his toes and was limping. Lastly, Plaintiff alleges that he told Defendant Spano Lewis about pain in his hands, feet, back, and genitals, but it took eleven months of complaining to receive treatment. When Plaintiff finally saw Defendant Spano Lonis she prescribed him foot fungus cream for his genitals, which Plaintiff claims to have done nothing to remedy his pain.

At this juncture, these allegations are sufficient to show that Defendants' conduct was either inadequate and caused Plaintiff prolonged pain or that there was and continues to be a needlessly prolonged delay in treating Plaintiff so that his medical issues remain, and he continues to experience pain. Thus, taking Plaintiff's allegations as true, he has plausibly pleaded that Defendants Morozov, Zea, and Spano Louis were aware of a substantial risk that Plaintiff would suffer serious harm as a result of their actions or inactions. Plaintiff may proceed on his deliberate indifference claim against these Defendants for further development of the record.

        **2.**        **Defendants Quiros, Moore & Martin**

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). This is true with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("[A] plaintiff must plead and

prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983.). Moreover, "[s]ince *Tangreti*, district courts have held that review of a grievance, administrative, or disciplinary appeal is insufficient to establish the reviewer's personal involvement in claims relating to the underlying proceeding." *Muniz v. Cook*, No. 3:20-CV-1533 (MPS), 2021 WL 5919818, at *6 (D. Conn. Dec. 15, 2021) (collecting cases); *see also Rooks v. Santiago*, No. 3:20-CV-299 (MPS), 2021 WL 2206600, at *3 (D. Conn. June 1, 2021).

Here, Plaintiff has failed to allege facts that establish the personal involvement of Defendants Quiros, Moore and Martin in any alleged constitutional violations. Although Plaintiff alleges that he informed Defendants Quiros, Moore, and Martin about the alleged medical deliberate indifference he experienced, these allegations are too vague and conclusory to establish their personal involvement in an Eighth Amendment violation. Plaintiff does not allege when, where, or how he informed these Defendants about his medical needs, and he does not discuss the events that transpired as a result. Accordingly, Plaintiff's claims against these Defendants are dismissed.

### B.   Official Capacity Claims

Plaintiff brings this suit against Defendants in their official and individual capacities, but he solely seeks monetary damages and does not seek injunctive or declaratory relief. The Eleventh Amendment bars a federal court from holding Department of Correction employees liable in their official capacity for money damages. *See Kelly v. New York State Unified Ct. Sys.*, No. 21-1633, 2022 WL 1210665, at *1 (2d Cir. 2022). Plaintiff may seek official capacity relief against a state official only to the extent that he alleges an ongoing violation of the

9

constitutional rights for which a federal court may enter an order of prospective relief against that official in his official capacity. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022). Because Plaintiff is solely seeking monetary damages against Defendants, his official capacity claims against Defendants are dismissed. *See e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). If Plaintiff intended to seek injunctive relief against Defendants in their official capacities, he may file a motion for injunctive relief.

### IV.    CONCLUSION

The Court enters the following orders:

(1)    Plaintiff may **PROCEED** with his Eighth Amendment medical deliberate indifference claims against Defendants APRN Elina Morozov, RN Mariya Zea, and APRN Cheryl Spano Lonis in their individual capacities only.

(2)    Plaintiff's official capacity claims against all Defendants, and Plaintiff's individual capacity claims against Defendants DOC Commissioner Angel Quiros, Deputy Warden Moore, and Warden Robert Martin are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b). The clerk is instructed to terminate as defendants DOC Commissioner Angel Quiros, Deputy Warden Moore, and Warden Robert Martin.

(3)    The clerk shall verify the current work address of Defendants Elina Morozov, Mariya Zea, and Cheryl Spano Lonis with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to Elina Morozov, Mariya Zea, and Cheryl Spano Lonis at their confirmed addresses by **February 26**, **2026**, and report on the status of the waiver request by **March 30**, **2026**. If a Defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the

U.S. Marshals Service on that defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The clerk shall send a courtesy copy of this Order and a copy of the Complaint to the DOC Office of Legal Affairs.

(5) Defendants Elina Morozov, Mariya Zea, and Cheryl Spano Lonis shall file a response to the Complaint, either with an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons form is mailed to them. If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **August 28**, **2026**. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by **September 28, 2026**.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to

just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(11)    Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED.**

Hartford, Connecticut
January 27, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge